1

2

3

4

5                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF WASHINGTON

6   F. DORINE REYNOLDS,              )
                                     )   No. CV-09-0213-CI
7             Plaintiff,             )
                                     )   ORDER DENYING PLAINTIFF'S
8   v.                               )   MOTION FOR SUMMARY JUDGMENT
                                     )   AND GRANTING DEFENDANT'S
9   MICHAEL J. ASTRUE, Commissioner  )   MOTION FOR SUMMARY JUDGMENT
    of Social Security,              )
10                                   )
                                     )
11            Defendant.             )
                                     )
12  ─────────────────────────────────

13        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.

14  Rec. 17, 19.)   Attorney Maureen R. Rosette represents Dorine

15  Reynolds (Plaintiff); Special Assistant United States Attorney

16  Benjamin Groebner represents the Commissioner of Social Security

17  (Defendant).   The parties have consented to proceed before a

18  magistrate judge. (Ct. Rec. 7.) After reviewing the administrative

19  record and briefs filed by the parties, the court **DENIES** Plaintiff's

20  Motion for Summary Judgment, and directs entry of judgment for

21  Defendant.

22                            **JURISDICTION**

23        Plaintiff protectively filed for disability benefits (DIB) and

24  Supplemental Security Income (SSI) on January 5, 2005. (Tr. 54.)

25  She alleged disability due to colon cancer, severe depression,

26  extreme leg weakness, post-cataract surgery, post-traumatic stress

27  disorder (PTSD), and personality disorder. (Tr. 55.) She claimed

28

    ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
    GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

an onset date of March 1, 2002. (Tr. 73.)  Plaintiff received DIB payments for a closed period of disability from March 1, 2002, through November 30, 2004.  (Tr. 23, 933-34.)  When the Commissioner determined she was capable of returning to her past work as a telemarketer as of December 2004, she requested an administrative hearing, alleging her disability continued after November 2004. (Tr. 23.)   A hearing before administrative law judge (ALJ) Richard Say was held on June 6, 2007.  (Tr. 928-49.)  Plaintiff, who was represented by counsel, and vocational expert Deborah LaPoint (VE) testified.   The ALJ denied benefits on August 13, 2007, and the Appeals Council denied review.  (Tr. 7-9, 23-36.)   The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits.  42 U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).  Thus, the definition of disability consists of both medical and vocational components.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    In evaluating whether a claimant suffers from a
2    disability, an ALJ must apply a five-step sequential
     inquiry addressing both components of the definition,
3    until a question is answered affirmatively or negatively
     in such a way that an ultimate determination can be made.
4    20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
     claimant bears the burden of proving that [s]he is
5    disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
     1999). This requires the presentation of "complete and
6    detailed objective medical reports of h[is] condition from
     licensed medical professionals." *Id.* (citing 20 C.F.R. §§
7    404.1512(a)-(b), 404.1513(d)).

8    The Commissioner has established a five-step sequential

9    evaluation process for determining whether a person is disabled. 20

10   C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.

11   137, 140-42 (1987). In steps one through four, the burden of proof

12   rests upon the claimant to establish a prima facie case of

13   entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d

14   920, 921 (9th Cir. 1971). This burden is met once a claimant

15   establishes that a physical or mental impairment prevents her from

16   engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a),

17   416.920(a). At step five, the burden shifts to the Commissioner to

18   show that (1) the claimant can perform other substantial gainful

19   activity; and (2) a "significant number of jobs exist in the

20   national economy" which claimant can perform. 20 C.F.R. §§

21   404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496,

22   1498 (9th Cir. 1984).

23                    **STATEMENT OF THE CASE**

24   The facts of the case are set forth in detail in the transcript

25   of proceedings, and are briefly summarized here. At the time of the

26   hearing, Plaintiff was 60 years old, had completed high school and

27   attended community college and vocational school. (Tr. 61, 346,

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

651.)  Plaintiff testified she was unmarried, homeless, and living
in a friend's house.  (Tr. 935.)  She had colon cancer surgery in
February 2004, and follow-up chemotherapy until November 2004.  (Tr.
937.)  She testified there had been no problems with cancer since
that time.  (*Id.*)  She also had past mental health treatment for
depression and PTSD symptoms.  (Tr. 938.)  Plaintiff has past work
experience as a telephone answering service operator, telemarketer,
receptionist, general clerk, fast food worker, and customer service
clerk.  (Tr. 945-46.)

     She testified she could not lift more than 10 pounds before it
started to hurt; she could sit in a chair for about an hour, stand
for less than 10 minutes, and walk about a block.  (Tr. 939-40.)
She also testified climbing stairs and bending caused pain in her
back and legs; she needed to nap four or five times a day; and she
suffered aches and pains all of the time.  (Tr. 940-41.)  Plaintiff
reported she had problems with balance and got migraine headaches
three to five times a week that were quite severe and for which she
took medication.  (Tr. 442-43.)  She also reported she had extreme
memory loss since the chemotherapy.  (Tr. 943.)

**ADMINISTRATIVE DECISION**

     The ALJ found Plaintiff's date of last insured for DIB purposes
was December 31, 2009.  (Tr. 25.)  At step one, ALJ Say found
Plaintiff had not engaged in substantial gainful activity since
December 2004, the established date for the proceedings on review.
(Tr. 26.)  At step two, he found Plaintiff had severe impairments of
"major depressive disorder, generalized anxiety disorder,
osteoporosis, and . . . status-post stage III colon cancer, in

1  remission." (*Id.*)  The ALJ determined Plaintiff's alleged leg pain
2  and migraine problems were not severe impairments under the Social
3  Security Act.  (Tr. 29.)  At step three, he found Plaintiff's
4  impairments, alone and in combination, did not meet or medically
5  equal one of the listed impairments in 20 C.F.R., Appendix 1,
6  Subpart P, Regulations No. 4 (Listings).  (*Id.*)  The ALJ then
7  summarized Plaintiff's testimony and concluded her statements
8  regarding symptoms were not generally credible and "likely
9  exaggerated." (Tr. 32-34.)  At step four, he determined she could
10 perform sedentary work, including her past relevant work as a
11 telephone answering service operator, receptionist, and telephone
12 solicitor.  (Tr. 35.)  He found Plaintiff was not under a
13 "disability" as defined by the Social Security Act at any time from
14 December 1, 2004, through the date of his decision.  (Tr. 36.)

15                              **ISSUES**

16     The question is whether the ALJ's decision is supported by
17 substantial evidence and free of legal error.  Plaintiff argues the
18 ALJ erred when he: (1) assessed her credibility and pain complaints;
19 (2) rejected the opinions of examining psychologists Mahlon Dalley,
20 Ph.D., and Gary Lauby, Ph.D., and psychiatric nurse practitioner
21 Mary Berg; and (3) failed to include all her limitations in the
22 final RFC.  (Ct. Rec. 18 at 12-18.)

23                           **DISCUSSION**
24 **A.   Credibility**

25     When the ALJ finds a claimant's statements as to the severity
26 of impairments, pain and limitations are not credible, the ALJ must
27 make a credibility determination with findings sufficiently specific
28

to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment or combination of impairments "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Thus, although an adjudicator may not reject a claimant's extreme symptom complaints solely on a lack of objective medical evidence, the medical evidence is a relevant factor to consider. *Social Security Ruling* (*SSR*) 96-7p. Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.

As ruled by the Ninth Circuit,

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In assessing the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

reliability of a claimant's allegations, the ALJ may apply ordinary techniques of credibility evaluation, as well as consider the following factors: the claimant's reputation for truthfulness; inconsistencies either in her allegations of limitations or between her statements and conduct; daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d 597 n.5. The ALJ may also consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If the ALJ's credibility finding is supported by substantial evidence in the record, "the court may not engage in second-guessing." *Thomas,* 278 F.3d at 959; *Fair*, 885 F.2d at 604 ("credibility determinations are the province of the ALJ").

Here, the ALJ thoroughly summarized the medical evidence and Plaintiff's testimony. (Tr. 30-34.) In finding her testimony and written statements were not consistent or entirely credible, he discounted the severity alleged, but did not totally reject her statements. Rather, he found her capable only of sedentary work, with several non-exertional limitations in mental and physical functioning. (Tr. 30.) He specifically noted Plaintiff's report of anxiety, mood swings, and severe depression for several years, and mental health counseling in 2006. (Tr. 32.) Regarding her physical condition, he noted her testimony that she was advised by her doctor not to work until her colon cancer was under control; her osteoporosis caused severe pain in her back and legs; she lacked

stamina; and she needed to take one hour naps every couple of hours. (*Id.*)

The ALJ then summarized activities of daily living reported by Plaintiff in her application and at the hearing. (Tr. 32-33.) She stated she could drive up to 30 minutes, perform minor household chores, take care of her personal hygiene, as well as prepare meals, do her laundry, and work at her craft hobbies during the day. She reported spending as much time as possible with her daughter and grandchildren, playing computer games, cooking, shopping, and attending hockey games and church. (Tr. 30, 32.) Regarding work-related limitations, she reported problems with lifting, standing, walking, stair climbing, squatting and sitting, seeing, understanding, memory, completing tasks, hearing, and concentrating. She also stated weakness in her legs caused instability and loss of coordination. (Tr. 32-33.) The ALJ also noted that in the 2005 appeal, Plaintiff reported worsening arthritis in her legs and worsening anxiety attacks due to mental health therapy. (Tr. 33.)

ALJ Say found the objective medical evidence "could reasonably be expected to produce the alleged symptoms," but Plaintiff's statements regarding the intensity were exaggerated and not entirely credible. (Tr. 33.) He then provided specific "clear and convincing" reasons for discounting the severity of her allegations, and properly referenced the record in support of his findings. (Tr. 33-34.) Specifically, he found Plaintiff's own testimony that she could lift 10 pounds and sit for an hour at a time, as well as her self-reported daily activities, supported the RFC for sedentary work. (Tr. 33, 939-40, 944.) He noted inconsistencies in her

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

statements regarding reasons for quitting work and evidence of
symptom exaggeration and non-compliance with treatment and
medication recommendations (over and above the reported intolerance
of some medications). (Tr. 33-34.) Failure to follow treatment
recommendations is a "clear and convincing" reason to discount a
claimant's complaints of severe functional limitations. *Tommasetti*,
533 F.3d at 1040. He also referenced statements from Plaintiff's
friend that Plaintiff played computer games (a sedentary activity),
liked to sew and do craft hobbies and attend social activities.
(Tr. 35, 118-25.)

Further, as found by the ALJ, psychological testing revealed
objective medical evidence of exaggeration of limitations and
symptoms. (Tr. 34, 645.) He also found treatment notes did not
indicate severe limitations due to headaches or osteoporosis. (Tr.
33; *see, e.g.,* Tr. 821-22, 825.) The ALJ's credibility findings are
supported by substantial evidence and reflect a rational
interpretation of the evidence in its entirety. The ALJ did not err
in discounting the severe functional limitations claimed by
Plaintiff.

**B.   Evaluation of Medical Evidence**

Plaintiff argues the ALJ erred when he discounted the reports
from examining psychologists and mental health providers that she
suffered severe mental limitations stemming from diagnosed PTSD and
depression. (Ct. Rec. 18 at 12.) She contends the medical evidence
shows she is significantly more impaired than the ALJ found in his
RFC determination.

During disability proceedings, the ALJ evaluates the medical

evidence submitted and must explain the weight given to the opinions of accepted medical sources in the record.  Credibility is a factor weighed in the evaluation.  *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

The Regulations distinguish among the opinions of three types of accepted medical sources: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records.  20 C.F.R. §§ 404.1527, 416.927.  A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician." *Lester*, 81 F.3d at 830.  If the medical opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews,* 53 F.3d at 1043.  The opinion of a non-examining medical expert by itself cannot be considered substantial evidence that supports the rejection of a treating or examining physician.  *Lester*, 81 F.3d at 831.  Nurse practitioners and mental health therapists acting independently are not "acceptable medical sources" under the Regulations; however, as "other sources," their opinions as to the effects of impairments on a claimant's ability to work must be considered and the weight given

explained.  20 C.F.R. § 404.1513(d); 416.913(d); *SSR* 06-03p.

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

### 1.   Dr. Dalley and Associate

Independent review of the record indicates Dr. Dalley's associate, Brooke Sjostrom, M.S., conducted a psychological assessment on December 22, 2003.  (Tr. 167-75.) The report was adopted by Dr. Dalley.  (Tr. 171.)  Objective test administered included the Minnesota Multiphasic Personality Inventory (MMPI-2) and Trails A and B testing.  (Tr. 168-69.)  At the time of testing, Plaintiff was complaining of depression and colon cancer; she was not receiving mental health treatment.  (Tr. 170.)  Based on the results of the assessment, medication management of symptoms was recommended, although the evaluator opined "[Plaintiff] is not likely to benefit from traditional psychotherapy." (*Id.*)  The report did not include an explanation of this opinion.

The mental status exam revealed average mental control, average fund of general information, and an ability to think abstractly. Attentional abilities measured by the Trails A and B tests were within normal range, and Plaintiff reported independent living skills, sleep disturbances, and "occasional difficulty completing

daily household chores due to lack of energy." (Tr. 168.) The evaluator indicated MMPI-2 results were valid, and revealed a profile in which "exaggeration of both the extent and severity of actual physical symptoms" was considered likely. (Tr. 169.) Major depressive disorder (recurrent, moderate), and undifferentiated somatoform disorder were diagnosed. (Tr. 170.) Marked functional limitations were assessed in Plaintiff's ability to relate appropriately to co-workers and supervisors, and to respond appropriately to the expectations and pressures of a normal work setting. (Tr. 174.) Plaintiff received disability benefits until November 2004, based on impairments due to colon cancer and treatment. Although the ALJ discussed this evidence in his decision (Tr. 26), he was not required to reject or credit the functional limitations assessed, as they are not probative to the period at issue in these proceedings. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). However, the ALJ's discussion of Plaintiff's self-report, the evaluator's observations regarding Plaintiff's complaints, and objective test results showing symptom exaggeration creates reasonable inferences that support the ALJ's credibility findings. (Tr. 26.) *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). ALJ Say did not err in his consideration of Dr. Dalley's and Ms. Sjostrom's report.

### 2.  Dr. Lauby

The ALJ also summarized Dr. Lauby's evaluations dated August 2004 and August 2005. (Tr. 26-27, 345-53, 639-46.) As noted by the ALJ, Dr. Lauby assessed the same severe limitations in August 2005 as noted in his 2004 assessment. At step two of the sequential

evaluation, the ALJ summarized Plaintiff's self-report to Dr. Lauby of depression, anxiety, and multiple physical problems, and Dr. Lauby's observation of apparent exaggeration of symptoms and inconsistent responses to testing items. (Tr. 26, 27.)  The record supports the ALJ's findings that Plaintiff was articulate and showed no signs of obvious physical distress.  It also shows Dr. Lauby noted a lack of fund of information that was inconsistent with Plaintiff's level of education above average mental control. (Tr. 26, 347-48.) In 2004, Dr. Lauby opined specifically, "Her validity scores, taken together, suggest that she responded inconsistently to inventory items on multiple validity scales, thereby precluding presentation of any reliable interpretation of her clinical scale scores."  (Tr. 348.)

In 2005, Dr. Lauby administered a new MMPI-2 and also reported Plaintiff's scores showed that her symptoms may have been "seriously exaggerated."  He determined a reliable interpretation of clinical scale scores could not be provided.  (Tr. 645.)

At step four, the ALJ gave specific, legitimate reasons for giving little weight to the severe limitations noted by Dr. Lauby in the 2005 evaluation.  (Tr. 34.)  As found by the ALJ, and supported by the evidence discussed above, Dr. Lauby found test results invalid and indicative of exaggeration of symptoms.  (Tr. 645.)  Therefore, there is no reliable evidence to support findings of severe mental limitations.  In addition, the ALJ found Dr. Lauby's severe limitations in dealing with co-workers were inconsistent with Plaintiff's self-report, and the reports of friends and family, that she had few problems getting along with others.  (Tr. 34, 83, 121.)

1    It is noted on independent review that Dr. Lauby cited Plaintiff's

2    social isolations as "reason for special concern." However, the

3    record indicates Plaintiff socializes regularly with friends and

4    family and attends social events. (Tr. 95-97, 105.) The ALJ gave

5    sufficient "clear and convincing" reasons supported by the record to

6    discount Dr. Lauby's 2005 assessment of disabling functional

7    limitations. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th

8    Cir. 2007).

9        **3.   Nurse Practitioner Berg**

10       Citing *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996), Plaintiff

11   argues Ms. Berg's opinions should be evaluated under the standard of

12   a treating physician because she is part of an "interdisciplinary

13   team." (Ct. Rec. 18 at 12.) Under *Gomez,* the opinions of a nurse

14   practitioner were given the weight of a treating medical source

15   because of the nurse's close supervision by and ongoing consultation

16   with a medical doctor. *Gomez*, 74 F.3d at 971. However, the Social

17   Security Regulation relied upon in the *Gomez* ruling (20 C.F.R. §

18   416.913(a)(6)) has been amended and no longer includes

19   "interdisciplinary team," under the definition of "acceptable

20   medical sources." *See* 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-

21   5). Therefore, *Gomez* is not apposite here.

22       In 2006, the Social Security Administration recognized the

23   growth of managed health care in this country and the increased

24   reliance on "other medical sources," such as nurse practitioners and

25   physician assistants for treatment and evaluation functions

26   previously handled by medical doctors and licensed psychologists.

27   *SSR* 06-03p. In his Ruling, the Commissioner advises adjudicators

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

that opinions of "other medical sources" (*i.e.,* those who are not "acceptable medical sources" under the Regulations) may be given more weight than a treating physician if certain factors are present. As stated in the Ruling, "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id*. Among the factors considered in assigning weight and/or rejecting "other medical source" opinions is how often the source has seen the individual, and if her opinion has better supporting evidence than a conflicting acceptable medical source opinion. *Id*.

The record shows Plaintiff was referred to Spokane Mental Health (SMH) in February 2005, for mental health care. Ms. Berg conducted the initial assessment at the request of Dr. Lauby and an agency representative. (Tr. 648-55.) Ms. Berg is a psychiatric nurse practitioner, *i.e.*, an "other medical source," whose opinions must be addressed by the ALJ. *SSR* 06-03p. There is no evidence that Ms. Berg worked closely with an acceptable medical source at SMH, as claimed by Plaintiff. Other than a notation that Dr. Chellbarger was an "Assessment Team Leader" in January 2005, there is no indication Ms. Berg conferred with or was supervised by Dr. Chellbarger; there is no evidence that Dr. Chellbarger had any personal contact with Plaintiff or reviewed and signed Ms. Berg's report. (Tr. 633.) Therefore, even assuming *Gomez* applies, Ms. Berg does not qualify as part of an "interdisciplinary team." Further, there is no evidence that Ms. Berg had a treatment relationship with Plaintiff or had personal knowledge of Plaintiff's functioning over time. It appears she saw Plaintiff one time at SMH for the initial

assessment, which was based on Plaintiff's self-report and a review of Dr. Lauby's August 2005 test results. (Tr. 652-53.) Therefore, her opinions are not evaluated under the "treating physician" standard and do not warrant the weight given to an acceptable medical source. *SSR* 06-03p.

Nonetheless, the ALJ is obliged to consider Ms. Berg's opinions as to how Plaintiff's impairments affect her functional abilities.[1] If the ALJ rejects the opinions, his reasoning must be specific and "germane" to Ms. Berg.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ properly gave little weight to Ms. Berg's assessment because she specifically noted inconsistencies in Plaintiff's report of facts and questioned the validity of Plaintiff's scores. (Tr. 34.) This is a specific, germane reason sufficient to discount other source opinions. Further, the reasoning is supported by Ms. Berg's own report and SMH treatment notes.

Referencing Dr. Lauby's test results, Ms. Berg cited objective medical evidence of symptom exaggeration. (Tr. 652.) She also observed the validity of Plaintiff's impressions "is questionable," and referenced inconsistencies in Plaintiff's self report. (Tr. 653.) Ms. Berg also noted Plaintiff's inconsistency in taking

---

[1] Treatment notes indicate Plaintiff participated in counseling at Spokane Mental Health with a variety of mental health therapists individually and in group sessions. (Tr. 712-800.) The notes do not reflect the opinions of Ms. Berg. The ALJ did, however, properly considered those observations as directed by *SSR* 06-03p. (Tr. 34, *see also* Tr. 647.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

medication, and opined non-compliance likely contributed to the severity of her depression and anxiety. (Tr. 650, 653.) She recommended a consistent regime of anti-depressant medication to treat both depression and anxiety. (Tr. 653, 655.) When discharged from SMH in July 2006, Plaintiff reported feeling much better with treatment, her depression was much less, she was socializing, and stated she was "not interested in employment." (Tr. 647.) Thus, consistent with Ms. Berg's observation, the record shows that once Plaintiff complied with prescribed medication and treatment, her mental condition improved significantly within five months.

Although Ms. Berg formally diagnosed PTSD, depressive disorder, generalized anxiety disorder and personality disorder, these diagnoses are given little weight because, as properly found by the ALJ, Ms. Berg is not an acceptable medical source under the Regulations, and therefore is not qualified to diagnose a disabling impairment. 20 C.F.R. §§ 404.1527(d), .1513(d), 416.927(d),.913(d). The ALJ did not err in his consideration of Ms. Berg's report. Her opinions were properly evaluated and the weight given is reflected in the final RFC, which as discussed below, is supported by substantial evidence.

**C.   RFC Determination**

The RFC determination represents the most a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment is not a "medical issue" under the Regulations; it is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Id.* The final determination regarding a claimant's ability to perform

basic work is the sole responsibility of the Commissioner. 20 C.F.R. § 416.946; *SSR* 96-5p. No special significance is to be given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Although the ALJ gave little weight to the severe functional limitations assessed by Dr. Lauby in the form report accompanying the narrative evaluation, he did not totally reject Dr. Lauby's narrative findings. ALJ Say's RFC determination reflects a reasonable interpretation of the medical evidence in its entirety as well as Plaintiff's credible testimony and credible lay witness statements. As discussed above, the ALJ properly rejected medical opinions of severe limitations that precluded work and gave specific "clear and convincing" reasons for discounting Plaintiff's allegations of disabling symptoms. Although the court reviews these proceedings *de novo*, where, as here, substantial evidence supports the ALJ's determination and there is no legal error, the Commissioner's decision must be affirmed. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED**;

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED**.

DATED September 3, 2010.

<u>       S/ CYNTHIA IMBROGNO       </u>
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19